UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JOY LORRAINE LIVESAY VANN, )<br>        Plaintiff, )<br>)<br>v. )<br>)<br>STEPHANIE MORTON, *et al.*, )<br>        Defendants. )<br>_____ ) | Civil Action No. 3:24cv635 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff Juanita Claiborne's application to proceed *in forma pauperis* ("IFP Application")[1] and accompanying proposed Complaint. IFP Appl., ECF No. 1; Proposed Compl., ECF No. 1-1. Based on the financial information set forth in Plaintiff's IFP Application, the Court is satisfied that Plaintiff qualifies for *in forma pauperis* status. Accordingly, Plaintiff's IFP Application, ECF No. 1, will be granted, and the Clerk will be directed to file Plaintiff's Complaint. However, the Court finds that Plaintiff's Complaint suffers from defects that must be addressed before this action may proceed.

**I.   BACKGROUND**

As relevant to the claims before the Court and stated in the light most favorable to Plaintiff, the facts underpinning this action are as follows.

Plaintiff Joy Lorraine Livesay Vann began working for the Virginia Department of Juvenile Justice ("DJJ") as an Officer Specialist on July 25, 2023. Compl. Ex. 1[2] (hereinafter

---

[1] When a party proceeds in district court without prepaying fees or costs, it is said that the party is proceeding *in forma pauperis*. As such, the Court will refer to Plaintiff's fee waiver application as an "IFP Application."

[2] Exhibit 1 is comprised of the following: Plaintiff's EEOC Charge, dated 05/31/2024 (pp. 3–4), an EEOC Inquiry form from on or about June 3, 2024, which appears to be Plaintiff's attempt to upload supporting documents for her Charge (pp. 6–8); an Amended Charge, dated 06/06/2024 (p. 5); and a Determination and Notice of Rights letter from the EEOC (hereinafter, Right to Sue Notice), dated 06/14/2024 (pp. 1–2).

EEOC Documents) at 3, ECF No. 1-2.   Plaintiff alleges that from July 27, 2023, through August 31, 2024 (the effective date of her resignation), she experienced discrimination based on her age, disability, and race.   Compl. 4–5.   She also alleges that the DJJ's EEOC Consultant, Defendant Me-Lien Chung, retaliated against her "to the extent of putting [Plaintiff] on suspension without pay from 08/27/2024 through 09/03/2024 . . . . [and] exhibited the same behaviors as the charges that she brought against [Plaintiff]."   *Id.* at 6.   Plaintiff does not specify what triggered Defendant Chung's alleged retaliation.   *Id*.   Plaintiff ultimately resigned from her position with the DJJ, effective August 31, 2024.   *Id.*

Plaintiff appears to have filed an EEOC Charge on May 31, 2024, which she supplemented and amended in early June of 2024.   She received her Right to Sue Notice from the EEOC on June 14, 2024.   *See generally* EEOC Docs.   In her EEOC Documents, Plaintiff described the following in support of her Charge(s) of race, age, and disability discrimination:

> I have been told that I don't know if you have noticed it but you are white. Everyone else here is black.   The best thing that you can do is to say good morning and good evening and nothing else.   You don't speak black so don't bother trying to join our conversation.   Get your medical equipment out of my way.   That thing has no place being here and they shove my scooter or slam something into it.   You are the only one who is ADA so you can't do certain things, even though I am perfectly capable of doing it.   Rumors have been spread all over the facility that I am ADA, which I am not.   She is a liar.   You can't believe anything that she says. So much bullying has taken place that some of the counselors for my units refuse to work with me because they have been told that I don't know what I am doing. The list goes on.   I have been gathering data for 10 months and have an acknowledgement letter telling me that I have a right to file a case.

EEOC Docs. at 7.   Plaintiff seeks damages in the amount of $101,582.00.[3]

---

[3] The Court acknowledges that, after filing her IFP Application and Proposed Complaint, Plaintiff filed a Motion to Amend, in which Plaintiff represents that she uncovered additional information (presumably, the 115 pages of exhibits she then appended) and asks to convert her *ad damnum* to "[c]ompensat[ory] [d]amages in the requested amount of $300,000.00," *see* Mot. Amend, ECF No. 1-5.   Because the Court will be granting leave to amend, albeit in a narrowly prescribed form, *see infra*, the Court does not engage with prematurely filed Motion to Amend, the amended *ad damnum*, or Plaintiff's supplemental materials.

## II.   SCREENING STANDARD

When a plaintiff is granted authorization to proceed *in forma pauperis*, the Court is obligated, pursuant to 28 U.S.C. § 1915(e)(2), to screen the operative complaint to determine, among other things, whether the complaint states a claim on which relief may be granted.   *See* 28 U.S.C. § 1915(e)(2) (explaining that "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted").   A *pro se* complaint should survive only when a plaintiff has set forth "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a *pro se* complaint is "to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted), such deference "does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).   Nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategy for a party."   *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.   ANALYSIS

Pursuant to § 1915's statutory screening obligation, the Court has reviewed Plaintiff's Complaint and in so doing finds that the Complaint fails to state a claim upon which relief may be granted.

Plaintiff asserts claims for (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, (2) age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, (3) disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.

§§ 12112 *et seq*., and (4) an unspecified claim of "retaliation."  Compl. 3.  These assertions notwithstanding, the bare-bones allegations Plaintiff presents do not amount to claims under any of the foregoing.

### A.  Claims Against the Individual Defendants

To begin with, Plaintiff cannot sue individuals under any of the cited statutes—Title VII, the ADA, or the ADEA.  *Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) ("Because Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions, the ADA does not permit an action against individual defendants."); *Lissau v. Southern Food Serv.*, 159 F.3d 177, 180 (4th Cir. 1998) (observing that Title VII is the ADEA's "closest statutory kin" and thus that "[t]he Title VII definition of employer must be read in the same fashion as the ADEA definition of employer," i.e., precluding application of the liability-imposing provisions thereof with respect to individuals).  Thus, Plaintiff has failed to state any cognizable claim against Defendants Stephanie Morton and Me-Lien Chung.

### B.  Claims Against the Department of Juvenile Justice

With respect to her claims against Defendant DJJ itself, while that employer-entity *can* be held liable under the above-referenced statutes, Plaintiff's allegations are ultimately insufficient to state a claim.

#### 1.  Hostile Work Environment Discrimination

To state a hostile work environment claim[4] under Title VII, the ADA, or the ADEA, a plaintiff must allege workplace harassment that: (1) was "unwelcome"; (2) was based on a

---

[4] Because Plaintiff does not allege that she suffered a specific adverse employment action due to her protected-class characteristics, the Court construes her discrimination claims as premised on a hostile work environment theory, rather than direct discrimination.  *E.g.*, *Sempowich v. Tacial Sys. Techn.*, 19 F.4th 643, 649–650 (4th Cir. 2021) (to establish a *prima facie* case of unlawful discrimination under Title VII, an employee must show

4

protected characteristic (here, race, age, and disability status); (3) was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere"; and (v) was, on some basis, "imputable to the employer." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 302 (4th Cir. 2019); *Fox v. GMC*, 247 F.3d 169, 177 (4th Cir. 2001) (applying Title VII standard to ADA hostile work environment claim); *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (assuming without deciding that a hostile work environment claim exists under the ADEA, and applying the Title VII framework to the same).

The Supreme Court has held that "offhand comments[] and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). In other words, as the Supreme Court has made clear, a hostile work environment claim requires proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation modified). Here, Plaintiff has not alleged facts sufficient to allege the severe or pervasive harassment necessary to state a plausible hostile work environment claim on any of the statutory bases cited.

---

that: (1) [S]he is a member of a protected class; (2) her employer took an adverse action against her; (3) she had been fulfilling her employer's legitimate expectations at the time of the adverse action; and (4) the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination, including because the employer . . . replaced the plaintiff with someone outside the protected class); *see also Fox v. GMC*, 247 F.3d 169, 176 (4th Cir. 2001) (stating that courts apply Title VII precedent and standards in ADA cases); *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (burdens and order of proof in Title VII cases also apply in ADEA cases).

   The Court acknowledges that Plaintiff alleges that "Ms. Vann's supervisor did not turn in her evaluations, causing Ms. Vann's raises to be delayed," Compl. 5, but this allegation is made with zero nexus to Plaintiff's race, disability, or age. Without such a nexus, the Court cannot plausibly infer that Plaintiff suffered adverse employment action *because of* her protected class status. Moreover, even if there was some alleged nexus, Plaintiff wholly fails to allege that she was fulfilling her employer's legitimate expectations during the course of her employment, and the absence of allegations to support this factor is likewise fatal to any direct discrimination claim.

5

With respect to race discrimination and Title VII, although Plaintiff alleges that she received comments highlighting the fact that she was the sole white employee in the office and that she was told, "The best thing that you can do is to say good morning and good evening and nothing else.  You don't speak black so don't bother trying to join our conversation," EEOC Docs. at 7, she does not allege whether these comments came from one particular person or several, or when or how often she received such comments.  The remainder of Plaintiff's allegations about alleged bullying any harassment are wholly divorced from any reference to Plaintiff's race.  *E.g.*, Compl. 5.  Absent such allegations, the Court is unable to say that Plaintiff has alleged "severe and pervasive" *racially* discriminatory conduct sufficient to demonstrate that "the workplace [wa]s permeated with [racially] discriminatory intimidation, ridicule, and insult."  *Harris*, 510 U.S. at 21; *see, e.g.*, *Skipper v. Giant Food, Inc.*, 68 Fed. App'x 393, 398 (4th Cir. 2003) (allegations of thirteen usages of racial slurs and the existence of racist graffiti in the workplace insufficient to establish a hostile work environment).

Similarly, with respect to her claim of disability discrimination in violation of the ADA, the Court again finds that Plaintiff has failed to allege sufficient facts to establish the "severe and pervasive" element of a hostile work environment claim.  Although Plaintiff alleges that she has been told, "Get your medical equipment out of my way.  That thing has no place being here . . . . You are the only one who is ADA so you can't do certain things," that employees "shove [her] scooter or slam something into it," and that [r]umors have been spread all over the facility that [she is] ADA, which [she is] not," EEOC Docs. at 7, the Court is unable to plausibly infer from these allegations, on their own, that such conduct—while certainly rude and demeaning—rises to the level of severe and pervasive conduct sufficient to alter the conditions of employment.  *Fox*, 247 F.3d at 177.  In assessing this element, courts consider "the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 178 (quoting *Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir. 1999)). Once again, Plaintiff's Complaint and supporting documents are bereft of allegations tying the disability-related bullying she complains of (as opposed to any other complained-of conduct) to a specific timeframe or frequency, and it is unclear how the alleged harassment *unreasonably* interfered with her work performance. *See Fox*, 247 F.3d at 178; *Rozier-Thompson v. Burlington Coat Factory Warehouse*, 2006 U.S. Dist. LEXIS 46179, at *19 (E.D. Va. July 7, 2006) ("Courts do not view the ADA as a 'general civility code' . . . . Rather, the behavior or remarks in question must be regular and deeply repugnant—not merely unpleasant." (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)) (citing *Fox*, 247 F.3d at 179, and then citing *Edmonson v. Potter*, 118 F. App'x 726, 730 (4th Cir. 2004))). As such, Plaintiff fails to state a plausible claim for hostile work environment, in violation of the ADA.

The Court need not expend much ink on Plaintiff's ADEA claim for discrimination based on Plaintiff's age. Beyond alleging simply that she experienced age-related discrimination and that she was born in 1951, Plaintiff alleges no specific acts or statements by co-workers or her employer tied in any way to Plaintiff's age. *See generally* Compl. Plaintiff accordingly fails to state a plausible claim for age-related discrimination giving rise to a hostile work environment, in violation of the ADEA.

Finally, as to any of her claims—Title VII, ADA, or ADEA—Plaintiff's allegations do not provide any grounds upon which the Court could infer that the conduct of which Plaintiff complains is "imputable to [her] employer." *Parker*, 915 F.3d at 302. This fourth element of a hostile work environment claim creates strict employer liability if a supervisor perpetrates the

harassment and the harassment culminates in a tangible employment action; if the harassing employee is simply a coworker, "the employer is liable only if it was negligent in controlling working conditions." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)). Here, Plaintiff has not alleged the identities and respective employment roles of her alleged harassers, let alone that Defendant DJJ was negligent in responding to any report(s) of harassment from Plaintiff. In fact, Plaintiff alleged the opposite: that, "[a]s a result of the investigation by the Department of Juvenile Justice, 2 people were terminated, 1 transferred, and 1 retired." Compl. 5. If anything, Plaintiff's allegations give rise to an inference that—Plaintiff's resignation aside—Defendant DJJ investigated and acted upon Plaintiff's claims of workplace harassment. Thus, Plaintiff has failed to allege facts sufficient to support the fourth element of a hostile work environment claim, and so she has accordingly failed to state any such claim. *See, e.g.*, *Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 425 – 26 (D.S.C. 2014) (finding, at the summary judgment stage, that where the evidence showed "that [the plaintiff's manager] took corrective measures by discussing the issue with [the hostile coworker] on the one occasion when her use of [racist slurs] was reported to him," the plaintiff failed to establish that the coworker's conduct was imputable to the employer).

    2.  <u>Retaliation</u>

Plaintiff's claim for retaliation boils down to her allegation that Defendant's EEOC Consultant, Me-Lien Chung, retaliated against Plaintiff by (1) "repeatedly refus[ing] to furnish documents requested by [Plaintiff], while [Plaintiff] worked from home and during her vacation days to meet the requirements set by Ms. Chung," and (2) "putting [Plaintiff] on suspension without pay from 08/27/2024 through 09/03/2024." Compl. 5–6. Plaintiff does not articulate what triggered Me-Lien Chung's retaliation, and she again provides no basis for imputing any acts

8

by Ms. Chung to Defendant DJJ. Thus, the Court again finds that Plaintiff has failed to allege sufficient facts to state a claim for retaliation under any of the previously discussed employment protection statutes.[5]

## IV.   CONCLUSION

Having found that Plaintiff has failed to state any claim upon which relief may be granted, the Court finds that dismissal of this action is warranted. However, out of deference to Plaintiff's *pro se* status, the Court will not yet dismiss this action. Instead, the Court will ORDER Plaintiff to SHOW CAUSE why this action should not be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

/s/ RCY
Roderick C. Young
United States District Judge

Date:   September 2, 2025
Richmond, Virginia

---

[5] The Court again acknowledges Plaintiff's filing of 115 pages of supplemental documents, which occurred after Plaintiff filed her IFP Application and Proposed Complaint. Even if the filing had occurred concurrent with Plaintiff's initial application, rather than accompanying a Motion to Amend, the Court is not obliged to wade through over a hundred pages of materials in order to piece together Plaintiff's basis for recovery. *See Beaudett*, 775 F.2d at 1278 (remarking that the Court is not required to discern the unexpressed intent of a plaintiff or "take on the improper role of an advocate seeking out the strongest arguments and most successful strategy for a party"). Plaintiff is free to incorporate the necessary information from such materials into her allegations in any amended complaint she chooses to file.

9